In this suit, plaintiff seeks to recover from defendants, T. Miller Sons, a commercial partnership engaged in the general contracting business, and its alleged compensation insurer. The American Employers' Insurance Company, in solido, workman's compensation at the rate of $20 per week, for a period not exceeding 400 weeks, together with $250 as medical expenses, less compensation already paid for alleged accidental injury to his left index finger while working for defendant as a carpenter on the De Ridder Air Base on December 14, 1943, resulting in total and permanent disabilities.
In describing the alleged accident, the plaintiff states that while nailing a two-by-four stud to a plate he accidentally struck his left index finger with a hammer, which scraped and broke the tissues, tendons, leaders and cartilages in said finger at about the middle joint.
Plaintiff alleges that as a result of the accident, the said finger became stiff and tender, with ankylosis in the first and *Page 708 
second joints, and that infection of the second joint set in, all of which made him totally incapacitated from doing the work of a carpenter, for which he was employed at the time of his injury. He further alleges that he has offered to have his finger amputated if his physician recommends such amputation.
The American Employers' Insurance Company, in answer to the suit, made a general denial, asserting that it was not the compensation insurer of the defendant, T. Miller Sons. This is now conceded by the plaintiff, and the insurance company is now out of the case.
The defendant employer, T. Miller Sons, in answer, admits the employment, the accident and the compensation rate to be paid. It sets out that plaintiff has been fully paid compensation for the injury received by him; that is, for a period of 23 weeks at $20 per week; that he has fully recovered from the injury and that his present physical condition in no manner interferes with his ability to perform his accustomed duties. In the alternative, defendant tendered to plaintiff an operation by a physician of plaintiff's choosing, for the removal of his left index finger in the event the evidence substantiates his disability claim, averring that such an operation was minor in character, agreeing to pay the expenses thereof and agreeing to pay the plaintiff compensation during the period of disability resulting from such operation.
Upon these issues the case was tried, resulting in a judgment of dismissal of plaintiff's suit. Plaintiff has appealed.
This case presents purely a question of fact. The trial judge, after a careful review of the facts in the case, came to the conclusion that plaintiff had failed to carry the burden of proof imposed on him to show that he had not fully recovered from the accident complained of and therefore denied his claim for further compensation. Unless we can find manifest error in that finding of fact, we are to affirm his judgment.
The admitted facts are that plaintiff was employed by the defendant as a carpenter at the time of the accident; that while nailing a two-by-four stud to a plate, the timber slipped or turned and plaintiff missed the nail and struck his left index finger with the hammer; that he received no other injury; that he was paid the maximum compensation of $20 per week for a period of twenty-three weeks.
Plaintiff testified that he has pains in the middle joint of his finger, the finger stays swollen and continually hurts, and that he is unable to use it at all, and that when he tries to work his finger, a leader to the finger feels like it has a tired feeling. He claims that he has been unable to work since the date of the accident, December 14, 1943. However, he admits that after being discharged by Dr. Marcelli, the physician who treated him for his injury, he made no attempt to work.
Plaintiff, when injured, was referred to the First Aid Station of defendant where his finger was sutured. On the third day after the accident, he was referred to Dr. Marcelli for medical treatment. The doctor, on the first examination on December 17, 1943, found a laceration about 1 1/2" long and the finger swollen a little bit at the second joint. He removed the sutures, and there seemed to be stiffness in the joints and swelling in the finger. He saw plaintiff regularly every week, sometimes two or three times a week, the last time being June 3, 1944, when he discharged him. He again examined the plaintiff about a week before the trial. He did not have access to X-rays of the finger. On the day of the trial he examined the finger and found it much improved from his examination in June. On being questioned as to whether or not it was painful in using force to get the finger down, the doctor answered: "There was some resistence there. I cannot tell whether it is voluntary or just a stiffness in the joint, but there seems to be some stiffness in there yet." He is of the opinion that the finger will finally get well and would not for that reason advise having the finger amputated. He is of the further opinion that on June 3, 1944, plaintiff had about a fifty per cent. disability to his finger and that on the day of trial this disability was considerably less, by some 15 or 20 per cent. He is further of the opinion that use and manipulation of the finger would bring or should have brought the finger back to normal use.
Dr. J.D. Frazer examined plaintiff's finger in August, 1944, about a month before the trial, again a week before the trial and again on the morning of the day of the trial. He states that plaintiff had some ankylosis in the second joint of the finger and swelling, attributing the swelling *Page 709 
to a laceration of the finger in the past, and being of the opinion this laceration continued into the joint or capsule of the joint. He did not think that plaintiff was able, at the time of the trial, to do a carpenter's work. He would not recommend amputation of the finger, but recommends that plaintiff exercise the finger so he could get it to where he could use it. On cross-examination, he was presented a report which he made to the insurance company of his examination of August, 1944, which report was offered, introduced and filed in evidence, marked "Defendant 1." Commenting on this report, the trial judge states in his written opinion that the doctor had stated therein that the plaintiff was able to do "ordinary work." We fail to find the report in the record, but since the report was filed as part of the evidence which was before the trial court as such, we take the expression of the trial court as truly representing its contents.
Dr. T.H. Watkins examined plaintiff on September 26, 1944, about a month before the trial. His testimony was taken on October 28, 1944. Plaintiff then complained of pain and stiffness in the finger. The doctor found that plaintiff had at that time a little inflammation in the tendon joint sheath, but had no ankylosis of the joint. The X-ray disclosed no bone injury. He is of the opinion that there is no disability. He attributes plaintiff's condition to the non-use of the finger and lack of cooperation by the plaintiff to correct the stiffness, and is of the opinion that plaintiff's mental attitude is responsible for his condition. He says that plaintiff is determined that his finger hurts him too much to use it and is unwilling to make the effort to overcome the slight adhesions in the tendons; that there exists no physical injury to the structure of the finger which prevents him from using the finger in a normal manner if it were not for his mental attitude and that he should be entirely recovered from the injury. The doctor does not recommend an amputation of the finger in that none is necessary and would not benefit matters any if plaintiff's mental attitude remains the same, and that cooperation by plaintiff and activation of the finger will restore the finger to normal use. The doctor, on cross-examination, reaffirms his opinion in the words: "It is this man's mental attitude, Mr. Stewart, that is preventing him from getting well. The reason for the man not getting well is his unwillingness. He wouldn't let me do a thing. He said it was too painful to him. Finally, I induced him and got a two-thirds of a closure without much resistence, and he let me keep it there. I don't mean to say this man is a malingerer entirely but I do mean to say, he does not enter into an effort. A man anxious to get on back to work would have had that finger recovered long ago."
Dr. R.G. Holcombe examined the plaintiff on September 26, 1944, and his testimony was taken on October 28, 1944. The plaintiff complained to him of stiffness in the joint and of inability to have the proper flexion of his joint. He found that these complaints were not well founded. He examined the X-rays of the finger and found no fracture or any bony pathology to the joint. He was of the opinion that there was nothing in the condition of plaintiff's finger which interfered or should interfere with plaintiff's ability to perform the ordinary duties of a carpenter.
Under these facts, the lower court stated:
"In compensation cases, our Courts have always been liberal in construing the provisions of the Compensation Act favorable to the employee, and have likewise been liberal in matters of pleading, but in all cases arising under this Act, our Courts have strictly held that the burden is upon the plaintiff to establish his case with the same fair preponderance of the evidence, and with the same degree of legal certainty that is required in any other civil case. It is not enough that the plaintiff make his cause of action merely probable; the law requires that the plaintiff make his demand by a clear preponderance of the evidence, or else he must fail in his demand.
"In the case now before the Court, it appears to us that a fair analysis of the case shows that this man on December 14, 1943, while driving a nail in a piece of timber missed the nail with his manner and struck his index finger on his left hand and mashed the second joint; there was no indication of any fracture or bone injury of any nature, the injury being confined to the cartilege or soft tissues. The healig process appears to have been normal; there was no infection, and no ankylosis shown of the joint nor any other complications of any kind. The only evidence of any kind as to any disability is some stiffness in the joint caused by the injury to the tissues about the joint, accompanied, as the plaintiff says, by pain. This stiffness *Page 710 
in the finger now and for a long time past is due largely, it appears from the evidence, to a lack of use and manipulation of the finger. The employer paid this plaintiff the maximum compensation of $20.00 per week for a period of twenty-three weeks or approximately six months.
"Under this conception of this case, this Court can see no reason for any disability from this comparatively minor injury extending over a period longer than six months. None of the physicians would advise an amputation of the finger, which all say would be a minor operation, the reason for not advising an amputation being that the finger would get entirely well with a little use and manipulation. This Court feels that under the facts as developed in this case if this man's finger was not fully recovered within the approximate six months period after the accident during which time he was paid compensation, it was due to his own fault.
"We do not believe the plaintiff has carried the burden imposed on him, and for these reasons, the claims of the plaintiff must be denied. * * *"
In hearing the testimony of plaintiff and Doctors Marcelli and Frazer, it appears that the lower court was very attentive and in some places interrogated the witnesses. Suffice it to say that he had them under observation. Furthermore, it is unreasonable to believe that Dr. Marcelli would have discharged plaintiff on June 3, 1944, if he did not believe plaintiff fully recovered. After a careful consideration of the case, we are in full accord with the conclusion, quoted above, of the trial court, and therefore the judgment of the lower court is affirmed.